PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LORENZA BARNETTE, | ) | |
| | ) | CASE NO.  4:21CV0339 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| DAWN CANTALAMESSA, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF Nos. 10 and 12] |

*Pro se* Plaintiff Lorenza Barnette is a state prisoner presently incarcerated at Marion

Correctional Institution.  He brings this action pursuant to 42 U.S.C. § 1983 against the State of

Ohio, Mahoning County Prosecuting Attorney Paul J. Gains, Chief Trial Counsel Dawn

Cantalamessa, Mahoning County Common Pleas Court Judge Maureen Sweeney, Youngstown

Police Detective Sergeant John Kelty, and Youngstown Police Officers Kevin Bokesch and

Gerard Slattery.  *See* Amended Complaint (ECF No. 9).[1]

For the reasons that follow, this case is dismissed.

_____

[1]  Plaintiff filed an initial Complaint (ECF No. 1) in February 2021.  Thereafter,
he filed a Motion for Leave to Amend the Complaint (ECF No. 4) and a Motion for
Leave to File an Amended Complaint (ECF No. 6).  The Court granted Plaintiff's
Motions for Leave and instructed Plaintiff to file an Amended Complaint that
encompassed all of the allegations and claims against all defendants in one document.
*See* Order (ECF No. 8). Plaintiff complied with the Court's order and filed an Amended
Complaint (ECF No. 9) in June 2021, which the Court considers the operative complaint
for its discussion in this Memorandum of Opinion and Order.

(4:21CV0339)

## I.  Background

The Amended Complaint (ECF No. 9) contains very few factual allegations.  As best the Court can discern, the allegations concern:  the actions of law enforcement in allegedly presenting "false" documents to the grand jury that ultimately resulted in Plaintiff's indictment; the actions of the prosecutors in presenting his case to the "flawed" grand jury; and, the actions of the judge presiding over his state criminal case for her involvement in the purportedly flawed grand jury process.

Specifically, Plaintiff contends that Officers Bokesch and Slattery "maliciously" submitted false arrest reports "to cover up the illegal arrest."  ECF No. 9 at PageID #: 86, ¶ 21. And Detective Sergeant Kelty "malicious[ly] filed an indictment . . . after presenting this case [] to the grand jury."  ECF No. 9 at PageID #: 84, ¶ 12.  He also claims that the grand jury process was flawed and the prosecutors knowingly participated in the purportedly flawed proceedings. Plaintiff asserts that Chief Trial Counsel Cantalamessa knew that "no oath or affirmation exist[ed]" in his state criminal case, she knew "no quorum existed for the grand jury," she knew that probable cause had not been determined by the magistrate, and she was "holding the grand jury records."  ECF No. 9 at PageID #: 85, ¶¶ 14-17.  Plaintiff claims that Prosecutor Gains signed the indictment knowing it "was not found upon the concurrence of seven or more grand jurors," the indictment was not returned in open court, and there was no motion slip discharging the grand jury.  ECF No. 9 at PageID #: 84-85, ¶ 13.  Finally, Plaintiff alleges that Judge Sweeney "dismissed all [of] Plaintiff['s] motions filed challenging the trial court's jurisdiction and various item[s] of evidence," she did not request a show cause order relating to Plaintiff's

(4:21CV0339)

motion to vacate a void judgment, and she failed to investigate the purported flaws in the grand

jury proceedings.  ECF No. 9 at PageID #: 87, ¶¶ 22, 24-25.

Plaintiff claims that Defendants violated his rights under the U.S. Constitution, and he

seeks declaratory, injunctive, and monetary relief.

## II.  Standard of Review

By separate order, the Court has granted Plaintiff's Motion to Proceed *in Forma Pauperis*

(ECF No. 2).  *See* Order (ECF No. 7).  *Pro se* pleadings are liberally construed and held to less

stringent standards than formal pleadings drafted by lawyers.  *Boag v. MacDougall*, 454 U.S.

364, 365 (1982); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Federal district courts, however,

are expressly required under 28 U.S.C. § 1915(e)(2)(B) to screen all *in forma pauperis* actions

and to dismiss before service any such action that the Court determines is frivolous or malicious,

fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant

who is immune from such relief.  *See Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010).  While

some latitude must be extended to *pro se* plaintiffs with respect to their pleadings, the Court is

not required to conjure up unpleaded facts or construct claims against defendants on behalf of a

*pro se* plaintiff.  *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citation omitted);

*Thomas v. Brennan*, No. 1:18 CV 1312, 2018 WL 3135939, at *1 (N.D. Ohio June 26, 2018)

(Gaughan, C.J.) (citing *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985) and

*Erwin v. Edwards*, 22 Fed.Appx. 579, 580 (6th Cir. 2001)).

In order to withstand scrutiny under § 1915(e)(2)(B), " 'a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' "

3

(4:21CV0339)

*Hill*, 630 F.3d at 470-71 (holding that the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), governs dismissals for failure to state a claim under §§ 1915(e)(2)(B) and 1915A) (quoting *Iqbal*, 556 U.S. at 678)).  A complaint fails to state a claim on which relief may be granted when it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 471 (quoting *Iqbal*, 556 U.S. at 663).

### III.  Analysis

#### A.  *Heck v. Humphrey*

As an initial matter, Plaintiff cannot collaterally attack his criminal conviction in a civil rights action.  *See Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that in order to recover damages for an allegedly unconstitutional conviction or sentence, or other harm caused by actions whose alleged unlawfulness would render the conviction or any part of the sentence invalid, a plaintiff must first show that the underlying conviction has been reversed on direct appeal, expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus.  512 U.S. at 486-87.  Therefore, a prisoner may not raise claims in a civil rights action if a judgment on the merits of those claims would affect the validity of his conviction or sentence, unless the conviction or sentence has been set aside.  *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Heck*, 512 U.S. at 486-87.  The holding in *Heck* has been extended to actions seeking injunctive and declaratory relief.  *See Edwards*, 520 U.S. at 646-48 (declaratory relief); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (extending *Heck* to actions seeking declaratory and injunctive relief).

4

(4:21CV0339)

Here, Plaintiff's claims against the defendants concerning his indictment and the purportedly flawed grand jury proceedings, and to the extent he claims false arrest, necessarily imply the invalidity of his conviction in his criminal case.  And there is no suggestion in the Amended Complaint (ECF No. 9) that his conviction has been set aside or his sentence has been invalidated in any of the ways articulated in *Heck*.  Thus, the Amended Complaint (ECF No. 9) does not allege a cognizable civil rights claim, and dismissal of the case is required on this ground alone.  *Edwards*, 520 U.S. at 646; *Heck*, 512 U.S. at 486-87; *see also* *Clements v. Brimfield Twp.*, No. 1:12CV1180, 2012 WL 5507305, at *11 (N.D. Ohio Nov. 14, 2012) (Boyko, J.) (finding the plaintiff's false arrest claims would call into question the validity of his conviction and are therefore barred by *Heck*).

To the extent Plaintiff is attempting to bring a claim for malicious prosecution against Defendants, this claim is also barred by *Heck*.  The Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment," which "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006).  The tort of malicious prosecution is "entirely distinct" from that of false arrest, as the malicious prosecution tort "remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process." *Wallace v. Kato*, 549 U.S. 384, 390 (2007) (emphasis in original).  One of the elements that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.  *Heck*, 512 U.S. at 484.

(4:21CV0339)

Here, if Plaintiff were to prevail on his purported malicious prosecution claim, the validity of his state conviction would be called into question. *See Holland v. Cty. of Macomb, No. 16-2103, 2017 WL 3391653, at *2 (6th Cir. March 17, 2017)* (finding district court properly dismissed the plaintiff's malicious prosecution claim as barred by *Heck*). And as discussed previously, there is no suggestion in the Amended Complaint (ECF No. 9) that his conviction has been set aside or his sentence has been invalidated. Accordingly, Plaintiff's malicious prosecution claim is barred by *Heck* and is dismissed.

### B. Proper Parties and Immunity

Even if Plaintiff could proceed with a civil rights action, he cannot maintain such an action against the State of Ohio. The Eleventh Amendment is an absolute bar to the imposition of liability upon States and State agencies. *Latham v. Office of Atty. Gen. of State of Ohio, 395 F.3d 261, 270 (6th Cir. 2005); Bouquett v. Clemmer, 626 F. Supp. 46, 48 (S.D. Ohio 1985)*. A State may not be sued in federal court unless it has consented to such a suit or its Eleventh Amendment immunity has been properly abrogated by Congress. Neither of these situations applies here.

Additionally, Judge Sweeney and Prosecutors Gains and Cantalamessa are immune from suit. It is well established that judges are generally entitled to absolute immunity from civil suits for money damages. *Mireles v. Waco, 502 U.S. 9, 9 (1991); Barnes v. Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997)*. They are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the exposure to damages by dissatisfied litigants. *Barnes, 105 F.3d at 1115*. For this reason, absolute immunity is overcome

6

(4:21CV0339)

only when (1) the conduct alleged is performed at a time when the defendant is not acting as a judge; or (2) the conduct alleged, although judicial in nature, is taken in complete absence of all subject-matter jurisdiction of the court over which she presides. *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116. A judge will not be deprived of immunity even if the action at issue was performed in error, done maliciously, or was in excess of her authority. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984) (merely acting in excess of authority does not preclude immunity).

Here, Plaintiff gives no indication that Judge Sweeney was acting in any capacity other than that of a judge when the conduct alleged in the Amended Complaint (ECF No. 9) occurred. Furthermore, Plaintiff appears to object to decisions that Judge Sweeney made in connection with the criminal proceedings against him. Decisions concerning pending motions, evidence, and indictments are all actions typically performed by judges in criminal matters. Therefore, Plaintiff has not established that Judge Sweeney acted clearly outside of the subject-matter jurisdiction of the court over which the judge presides. Judge Sweeney is absolutely immune from damages in this action.

Prosecutors Gains and Cantalamessa also enjoy immunity in this action. "[P]rosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case.' " *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)). So long as the prosecutor was engaged in prosecutorial functions, she is absolutely immune regardless of whether she undertook actions maliciously, in bad faith, or with an improper motive. *See Imbler*, 424 U.S. at 427, 428 n. 27, 431 & 431-32

7

(4:21CV0339)

n.34 (prosecutor immune after knowingly presenting perjured testimony and suppressing exculpatory evidence at trial); *Joseph v. Patterson*, 795 F.2d 549, 555 (6th Cir. 1986) (prosecutor immune after "knowingly obtain[ing] issuance of criminal complaints and arrest warrants . . . based on false, coerced statements"); *Grant v. Hollenbach*, 870 F.2d 1135, 1139 (6th Cir. 1989) (prosecutor immune for deciding to investigate and conspiring to present false charges to the grand jury, allegedly to satisfy a campaign promise to be tough on child abuse).  Prosecutorial functions include participation in probable cause hearings, grand jury hearings, pretrial proceedings, witness preparation, and trials.  *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010).  A supervising prosecutor is also absolutely immune to claims stemming from his supervision of other prosecutors.  *See Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) (stating that, although the supervision of prosecutors is an administrative function, it is "directly connected with the conduct of a trial").

Here, Plaintiff alleges that both prosecutors contributed in some manner to the purportedly flawed grand jury proceedings.  He claims that Chief Trial Counsel Cantalamessa had knowledge of certain deficiencies, including a lack of oath or probable cause.  And he claims that Prosecutor Gains signed the indictment in his state criminal case with knowledge of the purported deficiencies.  These claims concern typical prosecutorial functions for which both prosecutors are immune.  Moreover, Prosecutor Gains is absolutely immune from claims related to both his personal conduct as a prosecutor, as well as his conduct as a supervisor to the assistant prosecutor because at all times he was performing prosecutorial functions.  *See Burns*, 500 U.S. at 486; *Imbler*, 424 U.S. at 427, 428 n. 27, 431 & 431-32 n.34.  Finally, even if either of

8

(4:21CV0339)

the prosecutors acted in bad faith, knowing there were deficiencies in the grand jury proceedings or that probable cause was lacking, they are absolutely immune from Plaintiff's claims.  *Imbler, 424 U.S. at 427, 428 n. 27, 431 & 431-32 n.34*; *Joseph, 795 F.2d at 555*; *Grant, 870 F.2d at 1139*.

## IV.

Plaintiff filed a Motion for Reconsideration on the Court's Order Granting Plaintiff's Motion to Proceed *in Forma Pauperis* (ECF No. 10).  He argues that the requirement that "the prison cashier's office shall deduct, and forward to the court, 20% of the preceding month's income credited to the prisoner's account each time the amount in the account exceeds $10.00 until the full fee has been paid" is "an extreme burden" on him.  ECF No. 10 at PageID #: 118.

The Prisoner Litigation Reform Act of 1995 ("PLRA") states that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee."  28 U.S.C. § 1915(b)(1); *see also In Re Prison Litigation Reform Act, 105 F.3d 1131, 1138 (6th Cir. 1997)*.  The *in forma pauperis* statute, 28 U.S.C. § 1915(a), does provide prisoners with the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.  *See Miller v. Campbell, 108 F. Supp.2d 960, 962 (W.D. Tenn. 2000)*.  "After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account."  28 U.S.C. § 1915(b)(2).  Because Plaintiff did, in fact, file a signed Affidavit seeking pauper status, the Court will not reconsider its June 14, 2012 Order (ECF No. 7) granting his request to proceed *in forma pauperis*.

9

(4:21CV0339)

## V.

Plaintiff also filed a Motion to Supplement the Record (ECF No. 12).  He moves the

Court to direct the Mahoning County Clerk of Courts Office to transmit the entire record in

Mahoning County Court of Common Pleas Case No. 2009 CR 01122.  The motion is denied

because the entire record from Plaintiff's criminal case is not necessary for a disposition of the

issues presented in the case at bar.

## VI.  Conclusion

For all of the foregoing reasons, this action is dismissed pursuant to 28 U.S.C. §

1915(e)(2)(B).  Plaintiff's Motions for Reconsideration on the Court's Order Granting Plaintiff's

Motion to Proceed *in Forma Pauperis* (ECF No. 10) and to Supplement the Record (ECF No.

12) are denied.  Furthermore, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an

appeal from this decision could not be taken in good faith.


IT IS SO ORDERED.


 October 29, 2021                              /s/ Benita Y. Pearson
Date                                        Benita Y. Pearson
                                            United States District Judge

10